Good morning, Your Honors. Stephen Brower for Appellant California Scents. I'm happy to say I would like to reserve five minutes for reply. I think this is an exceptionally well-briefed matter. There are a few points I would like to bring to the Court's attention as I see it, as I reread it this morning and reconsidered what Your Honors are considering. First, it's very clear that the parties always treated this from back in November of 1999, and the Court treated it as being on the docket as a jury trial. You might ask me, if you want to, why didn't I request a jury demand in the complaint? Honest answer, I can't remember. It was me. I've been on this case since 1995. I can't remember why the complaint did not have that demand. But the counterclaim did. Does it have to be a compulsory counterclaim? No. It has to be that the issues are the same. The compulsory counterclaim is an extra argument that I think is a good one, but in no way is that necessary. What are your cases that interpret the word issues? You know, Your Honor, we looked at the word, both because Moores, and maybe that's not the best way to do it, Moores makes it quite clear that it's issues. The FRCP says it's issues. The FRCP in no way says it's the pleading or the cause of action. I've never seen it attack anything other than the issues, frankly, Your Honor, nor did I see any such cases in the opposing. Have you heard the term same matrix of facts in a case called Las Vegas Sun v. Suma Corporation? I will have to condition, Your Honor, that I'm not prepared with that case. All right. Go on. But any matrix of facts would make us clearly and easily covered without a compulsory counterclaim, Your Honor. And that's one of the new points I wanted to bring to Your Honor's attention this morning. Let me jump there. If you look at the excerpts of record which we provided to Magistrate Judge Nakazato's opinion, which is the one that he made, and that would be at page 52 of the excerpts of record, Your Honor will recall that early on in this case, we made a strategic decision to take a deposition solely on the counterclaim, not on the complaint. As Magistrate Nakazato states at 53 at the top, he mentions at our 36 deposition notices, the second paragraph, quote, expressly notified PESCO that the scope of its deposition would be limited to certain allegations in PESCO's counterclaims, end quote, and goes on from there. We made a strategic decision. The deposition notice stated this is only on counterclaims. He then points out that we even gave notice that we were expressly going to ask about, and this is the middle of his second paragraph on 53, that we were only going to ask, one of the things we were going to ask about was paragraph 13 of the counterclaims, which is paragraph 13 is the one that was in the first cause of action and the second and incorporated into the third, which is that our allegations of trade dress infringement were untrue. So we gave notice that one of our topics would be in your counterclaim, when you say that our allegations of trade dress infringement are untrue, what are the facts? And this wasn't a finding by Judge Nakazato. This was a finding by Mr. Ward, who's not here. I'm pointing to his side of the table. His partner is here today and not Mr. Ward. And Judge Nakazato points out correctly what happened at the deposition, and he says, I asked a series of four questions regarding that paragraph 13 on the counterclaim only, and at the bottom of 53 of the excerpts of record, Magistrate Nakazato notes, Jeffrey P. Ward, one of Pesco's Pennsylvania counsel, interposed objections and repeatedly instructed Zlotnick, that's the plaintiff, the defendant witness, not to answer these questions because, according to Ward, according to counsel, these questions exceeded the scope of the notice by delving into Pesco's defenses to the claims asserted in California's sentence complaint. And Ward also maintained that Zlotnick would answer those questions on behalf of Pesco, quote, ad nauseam, end quote, when California's sentence redeposed Pesco in connection with its affirmative defenses. He offered to allow blah, blah. If you have some counterclaims which are involved with the same issues or matrix of the facts as the complaint, but some that are not, like the false advertising, I don't see how that's got anything to do with trade drafts. What about that? No jury trial right on those, perhaps. Interestingly. So you would get a jury trial on the issues that were the same, but not necessarily on the other issues? Which is all that really went to trial, Judge Reed. I mean, the interesting thing here was they dismissed their counterclaims, so their false advertising wasn't there. They lost on summary judgment their attempt to bring in a third party. That happened long ago. They counterclaimed against a third party. They lost that on summary judgment. So that party wasn't there. And our advertising claims, in fairness, I'm trying to think, I don't think they're even mentioned in the judge's decision. They were so thin. As I stand here, I can't tell whether they were not tried or were submitted in absentia. But they were not even a part of the case. The case that went to trial was the trade drafts, which is what exactly was what their counsel said. I couldn't even ask them the factual basis for their counterclaim because it was really my complaint I was asking about. They were so sure of that. We were sitting in Pennsylvania when this decision occurred. They were so sure of that that we flew home to California, went to Magistrate Judge Nakazato, got a ruling. And the part that Magistrate Judge Nakazato said is what you see in the record where he says this thing is so, it's your fault, defendant, you filed a counterclaim which is so inextricably intertwined that Mr. Brower's questions were correct. And we were ordered permission to go back to Pennsylvania to conclude the deposition on the counterclaim to ask the questions that Mr. Ward said were an infringement on the defense to the complaint. So under any matrix of facts, forgetting compulsory counterclaim, under any relationship of issues, their first, second, and third counterclaims, which say you told people falsely that we infringed your trade drafts, we did not, was the exact mirror of the complaint which says you infringed our trade drafts. Further on the compulsory counterclaim, since if we prevailed on the complaint and shown that they did infringe on our trade dress, that would per se be a defense to any counterclaim that you falsely told people. Kennedy. Were they compulsory counterclaims? Excuse me? Were the counterclaims compulsory? I believe the counterclaims were compulsory to the extent they wanted to bring them. They may have been thin, but they were dismissed with prejudice before this Court, for the first time, considered our appeal and reversed it. So they made a decision. Well, are they out of the case? They're totally out now, or are they going to be tried if this case is sent back? They dismissed the counterclaims with prejudice before the first appeal. Well, does that take them totally out of the case then so that you can't rely on the jury demand? Well, no. That's exactly what the issue is, Your Honor. The rule 37 says that once the demand has properly been made, and once the 38, 37 and 38 are the two, and once that demand is carried on the docket, the only way that demand can be relieved from the docket is by stipulation of the parties. The district court here So even if those counterclaims are gone, doesn't make any difference, you can still rely on the jury demand? Yes. And I don't believe there's any real dispute about that question. Let me use all your time up on that then, thank you. Excuse me? I'm sorry. Let me use all your time up to go on with whatever you'd like to say. Thank you. I'm, of course, happy the questions from the panel are what are more important to me, Your Honor. Let me point out just in regard to that statement I made that was shown on the docket that way. You have to understand the complaint was filed in January of 99. Counterclaims were filed in roughly June of 99. In November of 99, we had our first conference with the court. The joint report from the parties reported this as a jury trial and reflected in excerpts of record tab 134 as the docket. The court set the entire case as a jury trial. That was done back on docket items 26 and 27 in November of 99. So when the parties appeared for the first time in front of the court, this was shown as a jury trial. The parties then appeared in front of the court again on August 4th of 2000, at which time it was continued and the matter was shown as a jury trial. That is docket 183. The parties eventually came here to this courtroom and were sent back, and at the spreading of the mandate, this case was again set down on docket 217 as going forward. There was no discussion even at the spreading of the mandate when the trial date was set that this was not a jury trial. So even after the counterclaims had been dismissed, even after the motion for summary judgment had been granted, gone up and been reversed, at the spreading of the mandate, this was still on the docket as a jury trial. The court acknowledged that the time and briefs acknowledged the first time this issue was ever raised was when we were preparing the pretrial papers in later 2002 or early 2003, but the time it was really getting ready for trial. And that's what the opposing brief says. The first time this issue was raised was in the pretrial discussions, orally raised to Judge Taylor, and then he asked for a briefing on it. So this matter was carried as a jury trial on the doctrine of the court correctly and continuously from November of 1999 through the time this matter came up. The issues of the counterclaim are so clearly inextricably intertwined that Mr. Ward said he wouldn't allow his client to answer questions about the counterclaim because they were, quote, ad nauseum what would come up to defend the complaint. He went, let it go to Magistrate Judge Nakazato, who said he sees them as being Also remember that at the time, and of course, this entire thing is de novo, and there is not even a section on standard of review in the appellee's opening brief. So I don't think there's any dispute that this is almost entirely a de novo review that we're here on today. It is de novo as to denial of jury under the Kulos decision for Ninth Circuit. It's de novo as to FRCP interpretation under the Mann Ninth Circuit decision. It is de novo on whether the counterclaim is compulsory under the Pucciro Ninth Circuit decision. I take it when the judge held the bench trial, he did not deal with the counterclaim. Is that right? No, because they had been dismissed with prejudice two years earlier. All right. Thank you. The sole ground on which the district court denied a jury trial was that he said the issues weren't substantially similar. That's what you want us to redetermine de novo. Yeah. Well, actually, as I say, it's a de novo determination. But, yes, that was the sole ground he cited. He said it was not a – in fact, he said we were wrong to even imply that there was a waiver question. He explicitly said it was not a waiver issue. No, he said it's – if there was substantial similarity in the issues, then he would have given a jury trial, he said. But – I don't have the order in front of me, but, yes, he marched through and said it was not a waiver issue. Right. The sole issue was similarity of issues between the counterclaims. And he said that the magistrate judge's decision was one for discovery but not binding on trial. And that was an important point I want to bring up. The judge made this decision about jury trial before there was any trial. So at the time, he said, you know, this wasn't some sort of trial decision based on evidence and merits and consideration. He had in front of him the exact same pleadings that the magistrate judge had in front of him. And the exact same pleadings that Mr. Ward, the attorney for defendant who had filed the counterclaims, said, Mr. Brower, you can't ask questions. That's exactly ad nauseum what you're going to ask me when I come to the complaint. So Mr. Ward had clearly taken the position that his counterclaims could not be inquired into. And as that's reported in magistrate judge Nakazato's decision, without getting into the essence of the defense of the complaint. So for them to now take the position that they somehow don't see a relationship of issues when they were so sure they related that they allowed us to come home to California and lose emotion on that subject is somewhat disingenuous. The issues are clearly overlapping. I'm just going to briefly see what points, because I don't want to waste the Court's time with re-plowing the briefs. As I say, I think they are really quite excellent on both sides. I guess, Your Honors, I would like to briefly touch, unless you have other questions, on the whole issue of prejudicial. I think the legal standard is pretty clear. The Ninth Circuit in Fuller v. City of Oakland says that the denial of a jury trial necessarily requires a new trial unless the district court could have granted judgment as a matter of law. The district court did not purport to do so or try to do so. It once granted summary judgment. It was reversed by this Court. The matter then went to trial. The judge himself is the one who said he would not allow findings of fact and conclusions of law. He said that right in the opinion which is attached as part of the reporter's transcript, that he wasn't willing to go through that. And he said that he would make the decision, and I would mention in the excerpt of record, page 81, the transcript at the top of page 13, and he refers to finding by preponderance of the evidence, not to any kind of legal conclusion. And in that same page is where he says he does not want to see any findings of fact and conclusions of law. Was the honorable district judge necessarily wrong? I don't want to say that. I don't need to say that. But if the standard is, well, you're only entitled to a jury trial if you can prove that the judge was wrong, that abrogates the right to a jury trial. And luckily we know from the Ninth Circuit itself that that is not the standard. Jury trial right is one that we are reviewing court, is required to indulge every reasonable presumption in favor of it under U.S. v. Nordbrock. This is one of those rare cases where we've had almost nothing but Ninth Circuit decisions. It's somewhat unique in that way. It's really a pretty clear case, Your Honors. The issues were told by counsel for defendant to be totally interrelated. The magistrate agreed with them and agreed with them so much that he told them to go back and let us take the deposition. Fair reading makes it very easy. If you look at paragraph 12 of the counterclaim, it says you told people we infringed your trade dress. Paragraph 13, that's not true. Next cause of action, you told people we infringed your trade dress. Next paragraph, that's not true. Third cause of action, you told people the things that you said in the first and second cause of action. So I see this as being a clear counterclaim covered case. The last question I might ask, and I will, is why did the district judge on a three-day estimate for bench trial, a five-day estimate for jury trial, find it necessary to do this? And he found, for example, that he didn't think there was evidence of likelihood of confusion. Yet the Ninth Circuit three brethren did find that in their written opinion. They found that there was evidence of likelihood of confusion that they sent back to him. That included, and we have it in our brief, so I won't reread it to you, the testimony of their national sales manager who said, I go to customers and they think our stuff is their stuff. Why? Because it looks just like their stuff. That is in the brief. That was testimony presented at trial. Their national sales manager. Well, what do they assume? They assume that we took their stuff because it looks just like ours. So as far as the likelihood of confusion, to say there was no evidence when there was, when their own national sales manager testified that customers were confused is a little difficult. With that, Your Honors, I will reserve what little time I have left for reply. Thank you. Very well. Good morning, Your Honors. My name is Richard Azak. I represent the appellee PESCO in this appeal. The crucial thing to keep in mind is the test. And the test under Rule 38, which is the applicable rule of federal civil procedure, is are the issues substantially related. And that's precisely the proper test that the district court judge here applied. The judgment or the order he issued on this issue, this is at the excerpts of Record Page 68, Paragraph 5, says the issues to be tried in the complaint and affirmative defenses are not substantially the same as the issues in the withdrawn counterclaim. That matches the language of Rule 38. And, in fact, that reflects what the pleadings were and are. The claim is a trade risk infringement claim, intellectual property claim. The counterclaim is not. The counterclaim is essentially defamation or business disparagement claim. They seem like they involve the same basic underlying facts. Isn't that true? Well, Your Honor. Though you can list different essential elements for the proofs. Your Honor, with all due respect, the elements are going to be different. And the essential facts are also going to be quite different. The essential facts for a disparagement, business disparagement or defamation claim would be things such as what misrepresentations were made, disparaging statements were made. Who made those statements? To whom did they make those statements? And when were those statements made? None of those facts are relevant or a part of a trade risk infringement claim. Instead, for trade risk infringement, you have an entirely different set of facts, which is what is the nature of the trade risk? Here it's a little can for some sort of scent. What is the product label on there? What color is the label? What kind of typeface does it have? Was there advertisements for that label or that product? What do those advertisements say? All those facts are wholly irrelevant for a defamation or disparagement claim. And so you have to be careful. Kennedy. What about the Las Vegas Sun v. Suma Corporation, which seems to define issues as being the same matrix of facts? Well, Your Honor, I think that if, and I'm not certain if that's a Ninth Circuit opinion, I'm not familiar with it. If it's a district court within the Ninth Circuit, well, either way, I'm not familiar  It's a Ninth Circuit opinion. For whatever reason, the research that our office did didn't come up with that case. And if it's something the Court wants to address, I'd be happy to submit a supplemental brief that addresses that case. But I think that the case law that ---- It's not exactly a brand-new case. It's 610 Fed 2nd, 614, Ninth Circuit, 1979. Okay. Well, I think that we actually ---- Is that a fair test, same matrix of facts? Well, Your Honor, it sounds like it's not a whole lot different from the compulsory counterclaim test that the Ninth Circuit has, which we have addressed in our brief and which I'm happy to address now, which talks about the essential facts being so logically connected that judicial economy and fairness suggest that the case is ---- the case treat both claims at the same time. But I think that under either test, whether it's considered matrix of facts or facts so logically connected, you're not going to have that test satisfied here. Because, as I said, the counterclaims for defamation are significantly and inherently different from trade dress infringement claims. Well, the defenses may get entangled with each other. It depends on what the claim of defamation is. So your defamation is to say that we weren't the first to have this trade dress. And then the issue is the same, basically. And you might well wind up with a decision that would bind the other case. Your Honor, for that proposition, there are a line of cases that the Ninth Circuit has recognized and that the Second Circuit has recognized as standing for the proposition that whatever overlap there is with regard to defamation claims regarding the complaint itself don't provide a basis for saying that there's a compulsory counterclaim. Here I'm referring to the Second Circuit's opinion in Harris. I understand that. I mean, the cause of action presumably accrues at a different time. But some of the issues are likely to be the same when you start arguing about what the defenses are and what the ---- Well, you're right, Your Honor. To the extent that you're talking about or that the claim or the counterclaim involves whether there was an actual trade dress to be infringed, that's true. But that — if that were to be the proper analysis, then I submit that would basically eviscerate the entire line of cases which the Second Circuit and the Ninth Circuit has recognized as saying that a counterclaim alleging defamation based on the complaint is not a compulsory counterclaim. Because in every instance where you have that, for example, any time you have a defamation claim which relates to the misrepresentations about the complaint, some plaintiff says that a defendant did something wrong, something nasty, something improper. And as a result of that, the plaintiff puts those kinds of things in his complaint and the defendant then files a counterclaim saying that's defamation. Well, in every one of those instances, that defamation count, a defense to that defamation count would be for the plaintiff to say it's all true. Right. And there's a line of cases which, as I say, the Second Circuit and Ninth Circuit both recognize as saying those kinds of counterclaims are not compulsory. And I guess then that brings it to the argument about whether you have to, whether it has to be a compulsory counterclaim. Right. And here we submit that these counterclaims would not be compulsory because they're But then the next question is, does that win the case for you? No, that doesn't. I think in addition to that, we need to establish that the claims are, that there's not substantially the same issues in both claims and counterclaims. And that goes back to the argument I began with, which is no, that the elements are entirely different to prove those two claims and to prove the counterclaims and the claims. And the facts that you would need to support that are essentially different. So for those reasons, I think, Your Honor, you would have, under either the Rule 38 test or the compulsory counterclaim test, no basis for saying that the plaintiff could piggyback off of the jury trial demand that was made by the defendants. To clarify, Your Honor, the question that Judge Reed had raised, the counterclaims were all dismissed with prejudice. They're gone from the case. There's no chance they will come back because they were dismissed with prejudice. And that was just all as a matter of streamlining the case so that we could take the initial summary judgment ruling by the district court up on appeal. The ---- Well, you know, I mean, just looking at Rule 38, what does that tell us? Trial by jury has been demanded as provided in Rule 38. The action shall be designated upon the docket as a jury action. Trial of all issues so demanded shall be by jury unless the parties or their attorneys of record by written stipulation file with a court by an oral stipulation made in open court and entered in the record consent to trial by the court sitting without a jury. Yes. And Rule ---- Why doesn't that answer? Because under Rule 38, it spells out that a party can specify particular issues that it wants a jury trial on. And that's precisely what happened here. Remember, the plaintiffs never request a jury trial. That's undisputed. It says the trial of all issues so demanded. So demanded. Exactly. Yes. I read that. That's precisely what our position is, Your Honor. The so demanded is what gives our argument oomph. The so demanded refers to the counterclaims only. That's the only portion of this case for which a jury trial was ever demanded by any party. And the only way that the plaintiffs, any other party, can piggyback off of that jury trial demand is by showing that their issues in their intellectual property claims for trade dress infringement are substantially similar to our issues in our counterclaim for defamation. But what about the matrix of facts? That, I think, comes into play. And we have here, haven't we? Well, I think that, Your Honor, the facts, the essential facts that are relevant for the defamation and business disparagement claims and the civil conspiracy, which relate to both of those, the counterclaims, those facts are, as I say, have to do with what representations were made that defamed us, who made them, to whom did they make them, and when were they made. Those are the kind of facts that you need to establish to prove defamation or business disparagement. That's an entirely different set of facts than what you have to prove to show trade dress infringement, where you have to take a look at what the trade dress is and what kind of label it has, and if it has a pull-top lid, and if it has a scratch-and-sniff feature on the label, and what kind of advertising was done for that. That's all the plaintiff has to prove in their to establish their trade dress case. And that is different. And courts have found so that it's different. For example, the Second Circuit in the Seminole case on this, the Harris case, had a similar situation where they had not trade dress, but they had a violation of securities law and a defamation count related to those violations. And the Court found that in order to establish defamation, there are elements you need to show, and those elements are fundamentally different from whatever elements you need to establish to show violation of securities laws. And for that reason, the Second Circuit determined that the defamation count was not the defamation counterclaim, was not a compulsory counterclaim. In fact, the Second Circuit even recognized that there would be some sort of collateral estoppel arrest due to caught effect on the securities law violation claims on the counterclaim for defamation, in essence saying that if the plaintiff were to win on their securities law violation claims, then the defendant's defamation claims would disappear as a result of collateral estoppel. It feels like the defamation claims are considerably overlapping the trade dress claims. Would you say that's so? Your Honor, with all due respect, I think that there is some overlap, like I said, because of the affirmative defense portion of what we alleged in our answer. But the essential facts to establish defamation, business defamation and business disparagement, are not overlapping. And the kind of the... Isn't that really the heart of the defamation claim? No, I would submit that the heart of the defamation claim would be to show that the plaintiff made statements which were made to other people in our industry which were harmful to our reputation. Those are the kinds of things we need to establish. And are false. I'm sorry? And are false. That's correct. That's correct. But that would be the same... But the falsity overlaps the trade dress claim. Your Honor, you're exactly right. And that would be true in every single case where a defamation count is raised in a counterclaim based on what's alleged in a plaintiff's complaint. And that is... The Second Circuit and Ninth Circuit law recognizes that that overlap is not sufficient to show that they're a compulsory counterclaim. Didn't Porchiro hold that it was? Porchiro, Your Honor, in Porchiro, the facts there, and the Court says it in the Ninth Circuit opinion, the defendant there who alleged the counterclaims actually admitted that his facts were logically connected with the claims that were raised by the plaintiff. And Porchiro didn't involve intellectual property claims versus a defamation claim. The case that comes closest to ours, and the plaintiffs haven't found anything closer, the two cases that come closest to ours are a Second Circuit opinion, computer science, and an Eastern District of New York opinion, Four Seasons. Both of those cases were decided, I think for sure computer science was decided after Porchiro. And those cases both involved intellectual property claims in a complaint and defamation claims in a counterclaim. And the issue is just compulsoriness. Exactly. And in both of those cases, the Court found that those defamation claims were not compulsory. And in making that decision, they were applying the same test which this Court has said needs to be applied here, which is are the facts, the essential facts so logically connected that judicial economy and fairness dictates that those should be tried, the counterclaims and claims, in the same action. And in both of those cases, the Second Circuit and the Eastern District of New York determined that they weren't so logically connected. And that's precisely what you have here. Now, those are the only cases that either side has found that deals with a situation where you have intellectual property claims in a complaint and defamation counterclaims by defendant. And both of those cases went in favor of defendant. And I think that the reason for that is, as I said, the type of facts needed to establish are just different. Now, in addition, you've got the computer science case, and I would like to discuss this for just one second. The computer science case is not a Ninth Circuit case, but it was decided after the Porchiro opinion by the Ninth Circuit. And it applies the same test that Porchiro adopted for the Ninth Circuit. And the reason we know that with certainty is because there is a Northern District of California case, the premier case that we cite in our brief, which thoroughly addresses the test that was applied in computer science and thoroughly discusses whether that test is the same as the test that this Court applied in Porchiro. And it is absolutely clear from the ruling in premier that computer science, the Second Circuit case, applied precisely the same standard, the same test that this Court approved in Porchiro. And, in fact, the Northern District of California said that Porchiro, the Ninth Circuit opinion, adopted verbatim the test that the Second Circuit set forth in Harris. So those cases from the Second Circuit are completely applicable here because they're applying the very same test that the Ninth Circuit adopted subsequently from the Second Circuit in that — from the Harris case. Now, I would like to take a moment to address something that — Kennedy. Porchiro is sufficiently related to the subject matter of the — in our case would be the complaint. Is that right? Well, Your Honor, Porchiro doesn't involve an intellectual property claim at all. The claims in the complaint there were for violations of security law, I believe. For certain, I know that they didn't involve intellectual property. And as I said, the — Is intellectual property, why should it be different from what Porchiro was dealing with was misappropriation of confidential consumer information? Your Honor, I think if the test that is being applied, and there's no question about that here, if the test that's being applied is are the essential facts so logically connected, then the cases which are going to give the best insight on that are cases which have claims and counterclaims that match up closest to the claims and counterclaims here. And that's not Porchiro. That would be computer science in the Second Circuit and Four Seasons from the Eastern District of New York. That's why I think that those two cases provide much more insight into how this case deals. The test is logically related as against sufficiently related? No, no. I'm not making that fine distinction, Your Honor. The test is that the essential facts are so logically connected between the various claims that judicial economy and fairness dictate they ought to be tried in one place. And that's, I think, what those two cases — all of the cases that I've been discussing, Porchiro, Harris from the Second Circuit, and Four Seasons from the New York District Court all apply those same tests. Now, opposing counsel during his presentation went into an excursion on the docket entries, and their brief for this Court essentially abandons that. There's some discussion of it in the background facts section, but there's no argument on that, and it's for good reason. CalSense had pursued that argument with the district court, but it's clear, and we cited two cases for the district court, that show that you cannot rely on an incorrect docket entry. There is no talismanic significance to the entry or the indication of a jury demand on a docket entry. If you don't have a right to a jury trial, you can't create that by having an erroneous docket entry. And here, there was an accurate entry on the jury docket entry because we have requested a jury trial on our counterclaims. The fact that that entry wasn't changed after we dismissed those counterclaims doesn't change the fact that there is no right to a jury trial. You know, the CalSense cannot create for themselves a right to a jury trial because the clerk at the docket did not amend that docket entry after we dismissed our counterclaims. And I believe there was one other argument that I wanted to address. Kennedy. Oh. If there was pressure by memory on that docket entry, would you? Sure. The California sense, the plaintiff is placing special significance on the fact that at various points throughout this litigation, the docket entry in the district court indicated that there was a jury trial right or there was a jury trial, cases marked for jury trial. Well, that significance is misplaced because the case law, and I can cite the Court to this from our – it's actually in the excerpt of record, and that would be page 62. There are cases which clearly establish that the clerk's designation on a docket entry does not create a jury trial right for anyone. So while the docket entry was correct initially in saying that there was a jury trial because we had asked for one on our counterclaims, subsequently we dismissed those counterclaims with prejudice. So the docket entry at that point should have been corrected to say, no, there is no jury trial. But instead it was not. I don't know why the clerk made that decision. Well, maybe the clerk was correct. Well, I don't think the clerk was in a position to make that determination. But in any event, what the district court judge found correctly was – Well, is it the clerk? When the clerk puts something down in a minute order, the clerk is reflecting the judge's ruling. But there was no ruling that the clerk would be reflecting at that point, Your Honor. I don't know. Well, I can tell the Court this. Maybe. I don't know. Well, we did have an oral – we had a status conference with the district court judge prior to filing the first appeal to this Court. And it was during that status conference, or maybe it was an oral argument, I think it was the oral argument where the Court indicated what it was going to rule on summary judgment, that we realized that if we maintained those counterclaims, there would not be a final order. It wouldn't be ripe for appeal on the summary judgment on the claims in the plaintiff's case. So at that time, the defendants determined that we would just abandon those counterclaims, that it was more important for us to try to get the whole case resolved. So that's when we dismissed with prejudice those counterclaims. At no point during that status conference did we discuss the question of jury trials. So it would have been something that the district court or the clerk would have done sua sponte as a result of that status conference. And so I think it's more likely, and I'm just guessing here. Well, I mean, we're looking at the application of Rule 38. And I just read that earlier. The trial of all issues so demanded shall be by jury, unless the parties or their attorneys have record by written stipulation. Right. And there's no doubt for our counterclaims, those are the only claim, only issues for which a jury trial was requested. Those counterclaims disappeared, and with them, so did the jury trial, because the other issues in the case for the claims are not substantially related to those counterclaims. The counterclaims for defamation are not substantially similar to the trade dress infringement claims. So you can't have. But they involve some of the same evidence. As I said, the evidence which would overlap would relate solely to the plaintiff's defense of those defamation counts. And those kinds of that kind of evidence is something that the courts in the Ninth Circuit and the Second Circuit have recognized doesn't provide a basis for saying that the claims are substantially similar, because you're talking about claims, defamation counterclaims arise from the allegations in the complaint itself. We're talking about issues. Right. Issues. And we're talking about the matrix of facts. Uh-huh. And I'd be happy to. The issues, as I say, the issues for defamation count are do you have publication, do you have privilege, are the statements a fact or opinion? The issues for trade dress infringement are none of those things, and instead are what kind of label do you have? Is it functional? Is your trade dress functional? If it's not functional, is it inherently distinct? Is the matrix of facts the same as essential elements of a claim? You know, I don't know how we'd parse the difference if there is one, Your Honor. I can give you back the language that the courts have adopted as their tests, and I can't. Well, the matrix of facts are really not the same as the essential elements of a claim. No, and I'm happy to. If you went forward with your counterclaim, what facts would you have to prove? Say? Right. I would have to be able to prove what was said by the other side and who they'd say that to and when did they say those things and were those things, and here's the element which comes back to the trade dress, were those things true? But for the facts that are essential for my claim, most of those have nothing to do with trade  They're not part of a trade dress infringement case. The part where it becomes somewhat overlapping is solely because our defamation claims arise from and relate to the trade dress infringement complaint itself, and there we've got solid case law saying that's not enough. That's not enough to say that you've got counterclaims that are compulsory. Now why isn't this compulsory? Why isn't this compulsory? Under Rule 13. Under Rule 13, it's not compulsory because the test you apply is the one that logically connected, facts that are logically connected. And as the Court found in Computer Science and in Four Seasons and in Harris, defamation counterclaims are not so logically connected in their facts that they are considered to be it would be judicially sensible and wise to consolidate those. Two things. It seems to arise out of the same occurrences under Rule 13. And if you look at Pochero, you've got a defamation claim there going against a misappropriation of confidential consumer information claim, which seems to undermine your argument. Do you have a response to that? Yes. But Pochero does not involve a trade dress infringement or any type of intellectual property claim. It's a business conversion type claim. So the nature of that claim is different from what we have here. And Pochero, I submit, Your Honor, you've got a different situation there because there the defendant conceded that the his counterclaims were logically connected. He essentially admitted to the Court. If it's intellectual property, why should it be treated differently from other claims? I'm not suggesting it should be treated differently, Your Honor. What I'm suggesting is if you're looking to see how the claims and counterclaims compare, that the best way to know the answer to that question is to see what courts have done in those situations. And the courts which have addressed situations like ours, that's not Pochero. That's Computer Science and Four Seasons, the Second Circuit and the District of New York. And my time is up. Let me ask you this. Now, your counterclaims and sense claims, really what's critical here is who developed this distinctive trade dress? They're saying they did. You're saying your client did. Is that right? Well, yeah. In our counterclaim, we're saying that we didn't copy theirs. Yeah. So it's the same matrix of facts. Well, Your Honor, I say we did it first, and your client says, no, we did it first. So you've got a factual dispute there. But for trade, who created that trade dress first? And you're right, Your Honor. There might be a dispute about that, which might be relevant for our counterclaim. But it's not relevant at all as a matter of law for the trade dress infringement claim, because it's black letter law under trade dress infringement that it's irrelevant who came up with it first. The question is, is it entitled to protection? Is it functional? Does it have inherent meaning? Is there a likelihood of confusion? All that entire analysis, which we've gone through several times now, both in the district court and in front of this Court, is completely separate from a defamation analysis. In defamation cases, you'd never talk about likelihood of confusion or inherent distinctiveness or functionality of a product. That's all in the world of trade dress infringement, a separate world from defamation. Now, where they become overlapping is where the defamation claim arises from the fact that someone has filed a trade dress infringement complaint. And so, for sure, you're going to have some overlap there. But what the case law tells us is that that overlap is not enough to show a compulsory counterclaim or the two claims to be tried in the same case. Well, we're talking about the, you know, matrix of facts. Uh-huh. And I submit, Your Honor, that since the compulsory counterclaim test is facts that are logically connected, I don't know that there is much of a distinction. It might be splitting hairs. Not that I have many to split, but it might be splitting hairs to say that you've got different tests going on with the same matrix of fact versus facts that are logically connected. And one final point I'd like to make, if I can, is that it's an opposing counsel raises, so I'd like to address this. This Court has never, in this case, addressed or made a finding of fact which is binding on the district court in favor of the plaintiff other than to say that, you know, we couldn't get summary judgment. The rulings that this case, this Court made in the past in this case determined as a matter of law that certain elements of the trade dress were functional, certain that the trade dress was not entitled to be treated as inherently distinctive. But all the elements that I discussed in our brief about likelihood of confusion, the Ninth Circuit, as a procedural matter, could not determine any findings of fact that those factors weighed in favor of the plaintiff. That was all still to be determined by the district court, and that's just because of the procedural posture the case had when it came to this Court before. Thank you. Today, if you've been awake and you just put those words on your complaint. Your Honor, in fairness, Mr. Azak sort of admitted my case when he said Pachura was different because they admitted it was the same stuff. I read you his partner was so sure it was the same stuff that he went through a motion saying you can't ask questions, it's the same stuff. I would truly commend Your Honors to look at page 53 and 54 of the excerpts later, which is Mastery Judge Nakazato's writing, not because of his legal conclusion, but simply his factual layout, which is that Mr. Ward said these can't be told apart. You'll figure it out ad nauseum when you depose him on this. And he has a whole paragraph I won't read in the record, but what he says is he finds that it's not Pesco complained that we were trying to depose them on their counterclaim and learn about our complaint. He says that's not Mr. Brower's fault, it's your fault for drafting a counterclaim which so clearly blurs the distinction between the two that I can't even separate them. So we do have a Pachura situation which they have admitted that you can't tell the counterclaim. You know, Your Honors, even the people on the street, one of the few legal principles they know is truth is a defense. I had the pleasure to be here this morning with a very interesting argument at 8 a.m. If one of those women who had been involved in that matter had told one of her friends, you know, the West had discriminated against us because we're African-Americans. And now you had a counterclaim saying you defamed us by saying we discriminate. The trial would not spend a week on whether or not she told her friend. It would not spend a week on the date she told her friend. It would not spend a week on whether she meant it. It would spend a week or a month or a year on whether or not, in fact, it was a true statement that the West had discriminated against them. The same is true here. You can't Mr. Azak wants to argue in the abstract that defamation magically can't be part of a matrix of facts tied to an underlying case. But here, in fact, the intent of their counterclaim as phrased was to be interposed with no, no, nah, nah, you first. I would point, Your Honors, the fact, as Judge Pragerson noted, the docket does show it as jury. Our point wasn't that's an admission. Rule 38 says the clerk puts it down as a jury correctly, which it was correctly put down. It stays there until waived in writing by parties. My point was when we came back to spread the mandate, no one asked if we wanted to waive it, no one discussed if we wanted to waive it. It didn't even become a subject until later. Counsel, the judge decided it was a minute order in Chambers that he would have it tried to the court. And how did you bring an objection to him after that? In other words, he enters this order in Chambers. It says counsel aren't present. He just says this will be tried as a bench trial.  Did you? That was fully briefed, Your Honor. It was not. He didn't just sua sponte do that. He raised it orally. There were briefs that were part of the excerpts, and he then issued an opinion. So we believed. So there's no question you raised it. It was only bound. It was bound in the final appeal, and we were not aware. We did not take any kind of writ. We were not aware of any appeal right off of that order. No. What I'm talking about is I just didn't know where that order came from. If you briefed in favor of a jury trial.  And that was part of the excerpts, Your Honor. He held an oral conference first, so he would take it on papers and then decide it without further oral argument. Okay. Thank you. With that, I thank the Court for its time and attention. I would take the final matter up. Sandra Padilla v. Rosslyn.
judges: Pregerson, Canby, Reed